# EXHIBIT A

**ExxonMobil**

**Exxon Mobil Corporation**
22777 Springwoods Village Parkway
Spring, Texas 77389
exxonmobil.com

**Davis Polk**

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
davispolk.com

September 15, 2025

Office of Mergers and Acquisitions
Division of Corporation Finance
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

Attn:    Tiffany Posil, Chief of the Office of Mergers and Acquisitions
         David Plattner, Special Counsel, Office of Mergers and Acquisitions

RE:    No-Action Request regarding Rules 14a-4(d)(2) and 14a-4(d)(3) in connection with the
Proposed Retail Voting Program

Dear Ms. Posil and Mr. Plattner:

In connection with the proposed retail shareholder voting program (the "**Retail Voting Program**") described below and in other program-related materials provided to the Staff of the Division of Corporation Finance (the "**Staff**") for their review, Exxon Mobil Corporation, a New Jersey corporation (the "**Company**" or "**ExxonMobil**"), seeks confirmation that the Staff will not recommend any enforcement action by the U.S. Securities and Exchange Commission (the "**Commission**") against ExxonMobil with respect to the Retail Voting Program as it relates to compliance with Rules 14a-4(d)(2) and 14a-4(d)(3) of Regulation 14A promulgated under the Securities Exchange Act of 1934.

### I.    Background

ExxonMobil's retail investors, many of whom are retired and depend on ExxonMobil's dividends to support their livelihoods, have voiced significant frustration over the annual time commitment required to vote at our meetings of shareholders. Each year, retail investors face a large number of proposals to vote on. This burden is not just a matter of hours spent; it also disproportionately impacts retail investors who lack access to professionals dedicated to voting. This limits their participation in shareholder democracy.

The consequences are tangible: the Company's records indicate that at its most recent annual meeting, nearly 40% of our outstanding shares were held by retail investors, yet only a quarter of these retail shares were voted. Despite these low voting numbers, the Company's engagements reveal that retail investors are deeply invested in ExxonMobil's future and are eager for a more accessible way to participate in the Company's voting process. In reviewing these issues, ExxonMobil has long received feedback from its retail investors that they would welcome the ability to give a standing voting instruction whereby, on an ongoing basis, their votes would be cast as recommended by the Company's Board of Directors (the "**Board**"). This is consistent with current voting patterns among ExxonMobil's retail investors. Over the last five years, approximately 90% of retail investors that voted at ExxonMobil meetings supported all of the Board's recommendations. Such a retail voting program would give retail investors a "**Board**

1

**ExxonMobil**

**Exxon Mobil Corporation**
22777 Springwoods Village Parkway
Spring, Texas 77389
exxonmobil.com

**Davis Polk**

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
davispolk.com

**Recommended Policy**" choice and would complement other voting policy choices that currently exist in the market that are not primarily targeted to retail investors.

In order to (1) promote voting by retail investors, (2) provide a Board Recommended Policy choice, and (3) remove time and other burdens borne by retail investors in the proxy voting process, the Company intends to implement a voluntary, no-cost program that would allow ExxonMobil shareholders to authorize the voting of their shares through a contractual arrangement between each participating shareholder and the Company. The program would give those shareholders the ability to authorize a standing voting instruction that requires ExxonMobil to vote their shares based on the recommendation of the Company's Board at each meeting of shareholders.[1]

## II.    Design of the Retail Voting Program

The Retail Voting Program would be available to all retail investors,[2] including any registered owner or beneficial owner (via their bank, broker or plan administrator) of ExxonMobil's shares at no cost, and each investor would be offered the same opportunity to enroll in the Retail Voting Program. The Company intends to communicate directly with registered owners, and indirectly with non-objecting beneficial owners ("**NOBOs**") and objecting beneficial holders ("**OBOs**") via their banks and brokers and those entities' agents.

### *Opt-In Process*

Participating shareholders have two choices for the kinds of matters to which their standing voting instruction would apply: (1) all matters; or (2) all matters except contested director elections[3] or any acquisition, merger or divestiture transaction that, under applicable state law or stock exchange rules, requires approval of ExxonMobil's shareholders. These two choices provide shareholders with the ability to tailor their voting decisions.

### *Opt-Out Process, Reminders and Vote Overrides*

Participating shareholders may opt out of the program to cancel their standing voting instruction at any time and at no cost. Because votes for which the Company has received a standing voting instruction will be cast on the same day that the Company files a definitive proxy statement for an upcoming meeting, cancellation of the standing voting instruction will only

---

[1] At this time, the Company is only seeking no-action relief with respect to voting by retail shareholders at duly called annual general or special shareholder meetings and not with respect to any corporate actions that are taken by shareholder written consent.

[2] For the avoidance of doubt, the Retail Voting Program would not be available to investment advisers registered under the Investment Advisers Act of 1940 exercising voting authority with respect to client securities, unless the Commission otherwise determines.

[3] A "contested director election" means an election of directors in which the number of nominees for election to the Company's Board in that election exceeds the number of directors to be elected.

**ExonMobil**

**Exxon Mobil Corporation**
22777 Springwoods Village Parkway
Spring, Texas 77389
exxonmobil.com

**Davis Polk**

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
davispolk.com

apply to future meetings. Future meetings for this purpose means meetings for which the Company has not yet filed a definitive proxy statement.

Participating shareholders will receive annual reminders of their enrollment in the program and their standing voting instruction. This reminder will include explicit language informing the participating shareholder of their ability to opt out and thereby cancel their standing voting instruction with respect to future meetings.

Participating shareholders who selected to have their shares voted on "all matters" will receive an additional reminder prior to any meeting involving a contested director election or an acquisition, merger or divestiture transaction that, under applicable state law or stock exchange rules, requires approval of ExxonMobil's shareholders. This enables that group of participating shareholders to have another opportunity to decide to opt out of the program or override the standing voting instruction prior to that meeting.

While participating shareholders can only opt out of the standing voting instruction for future meetings, they can always override the votes cast by the Company through the standing voting instruction by voting using the proxy materials they received for that meeting. Vote overrides will apply to upcoming meetings for which the Company has filed a definitive proxy statement. In every reminder communication, participating shareholders will be informed that at any time, even after the Company has filed a definitive proxy statement, they can override the standing voting instruction and cast their own votes with respect to any proposal at an upcoming meeting using the proxy materials they receive that year (identical to any other shareholder voting at that meeting).

*Voting Mechanics*

The actual voting of shares pursuant to the standing voting instruction and any other administrative actions related thereto would be facilitated by ExxonMobil's vote processing agent, including communications between and among ExxonMobil, banks and brokers, shareholders and the backend portal through which shareholders may choose to opt in or out of the Retail Voting Program. Information contained within the vote processing agent's system, such as information related to OBOs, stays within the agent's system and will never be disclosed to ExxonMobil as part of the Retail Voting Program.

Shareholders participating in the Retail Voting Program would have their voting positions submitted after the Company files the definitive proxy statement with the Commission, but prior to the distribution of the definitive proxy statement to shareholders. As noted above, a participating shareholder can always override the vote authorized by the standing voting instruction by voting using the proxy materials they received for that meeting. As a result, enrollment in the program is a safeguard for those who want to ensure that their vote is actually cast in alignment with the Board's recommendations in an efficient manner, but it does not interfere with their rights and ability to vote at shareholder meetings. The standing voting instruction is designed to facilitate the shareholder's choice to establish a streamlined and automated process, and the same shareholder can easily override that process by instead voting at an upcoming meeting using the proxy materials they receive that year (identical to any other shareholder voting at that meeting). In this respect, the Retail Voting Program does not

3

**ExxonMobil**

**Exxon Mobil Corporation**
22777 Springwoods Village Parkway
Spring, Texas 77389
exxonmobil.com

**Davis Polk**

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
davispolk.com

limit or restrict shareholders from voting at any time using the proxy materials they received for the meeting.

In addition to program-related communications and reminders provided to participating shareholders, ExxonMobil intends to disclose the Retail Voting Program in its proxy statement for each upcoming shareholder meeting, including the ability of participating shareholders to opt out of the program for future meetings or to override their standing voting instruction with respect to the specified proposals at an upcoming meeting at any time prior to the vote at that meeting. As noted above, banks, brokers and plan administrators will communicate with NOBO and OBO shareholders about the Retail Voting Program via their agents for shareholder communication services.

### III.    Public Disclosure of the Retail Voting Program

At the initiation of the Retail Voting Program, the Company intends to file with the Commission the relevant materials describing the Retail Voting Program under cover of Schedule 14A pursuant to Rule 14a-12 and will subsequently file any material changes to these materials in the same manner.[4]

Furthermore, the Company will make full disclosure on its website and in its proxy statement of the Retail Voting Program. And shareholders will, in connection with each shareholder meeting, receive all proxy materials and will have the ability to opt out and cancel or override their standing voting instruction at any time, as described in detail above.

### IV.    State Law

The Company notes that the granting by a shareholder of a standing voting instruction pursuant to the Retail Voting Program is permitted under New Jersey law, which is the state corporate law applicable to the Company. The Company has also reviewed Delaware law with respect to the same question. New Jersey and Delaware state corporate law each permit the giving of a standing voting instruction that does not expire so long as the instruction provides for such extended duration. *See* NJ Rev Stat § 14A:5-19 ("No proxy shall be valid for more than 11 months, unless a longer time is expressly provided therein"); 8 *Del. C.* § 212(b) (proxies valid for up to three years, "unless the proxy provides for a longer period").

---

[4] The Company is not seeking no-action relief in this letter regarding whether the Retail Voting Program involves the "solicitation" of proxies, as defined in Rule 14a-1(l). In any event, to the extent communications related to the Retail Voting Program are considered "solicitations," the provision of such communications to beneficial owners of the Company's securities by banks, brokers and other nominees would be subject to Rule 14a-2(a)(1).

4

**ExxonMobil**                                                                 **Davis Polk**

**Exxon Mobil Corporation**                           **Davis Polk & Wardwell LLP**
22777 Springwoods Village Parkway                         450 Lexington Avenue
Spring, Texas 77389                                          New York, NY 10017
exxonmobil.com                                                    davispolk.com

**V.      Compliance with Rules 14a-4(d)(2) and 14a-4(d)(3)**

Under Rule 14a-4(d)(2), "no proxy shall confer authority […] [t]o vote at any annual meeting other than the next annual meeting (or any adjournment thereof) to be held after the date on which the proxy statement and form of proxy are first sent or given to security holders." Under a similar provision, Rule 14a-4(d)(3) provides that "no proxy shall confer authority […] [t]o vote with respect to more than one meeting (and any adjournment thereof)." 17 CFR 240.14a-4. The Company respectfully submits that the proposed Retail Voting Program should not be viewed as conflicting with Rules 14a-4(d)(2) or 14a-4(d)(3), given the reminders and easy opt-out and override abilities built into the program and the choices made by shareholders.

As noted above, shareholders that have opted in to the program will receive an annual reminder in the proxy off-season of their opt-in status and selection, which will remind them of their ability to opt out and cancel their standing voting instruction with respect to subsequent meetings. Participating shareholders will have the easy, no-cost ability and choice to leave in place the standing voting instruction, or to opt out and cancel the standing voting instruction. More importantly in this context, even participating shareholders that choose not to opt out are exercising a choice by leaving the standing voting instruction in place. Furthermore, at the time of receiving their proxy materials, participating shareholders again have the easy, no-cost ability and choice to leave the standing voting instruction in place, or to opt out and cancel or override the standing voting instruction.

Accordingly, the choice made (in response to the annual reminder or the proxy materials) is in our view a reaffirmation or renewal of the standing voting instruction, which enables compliance with Rules 14a-4(d)(2) and 14a-4(d)(3).

The Company respectfully submits that this position is consistent with the intent behind Rules 14a-4(d)(2) and 14a-4(d)(3). The Commission's commentary in connection with the adoption of Rule 14a-4(d)(2), for instance, notes that the purpose of Rule 14a-4(d)(2) was to avoid the premature solicitation of proxies.[5] The commentary in connection with the adoption of Rule 14a-4(d)(3) noted that the intent was to codify existing Commission interpretations of the proxy rules regarding proxies.[6]

The Company believes that the Retail Voting Program is not inconsistent with this intent for the following reasons. First, subsequently adopted Rule 14a-12 explicitly permits the solicitation of proxies before a proxy statement is furnished to security holders, so long as the relevant materials are filed with the Commission pursuant to Rule 14a-12 and the proxy

---

[5] See Federal Register, Vol. 12, No. 222, November 5, 1948, 6679 ("In order to prevent the premature solicitation of proxies at a time when material information has not yet become available, the amended rule provides that no proxy shall confer authority to vote at any annual meeting other than the next annual meeting (or any adjournment thereof) which is to be held after the date on which the solicitation is made").

[6] See Federal Register, Vol. 51, No. 224, November 20, 1986, 42049 ("As proposed, the Commission has added paragraph (d)(3) to Rule 14a-4 to codify current interpretations that a proxy may not confer authority to vote at more than one meeting or consent solicitation").

**ExxonMobil**

**Davis Polk**

**Exxon Mobil Corporation**
22777 Springwoods Village Parkway
Spring, Texas 77389
exxonmobil.com

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, NY 10017
davispolk.com

statement is distributed once available. Second, the Retail Voting Program does not "lock in" the proxy or the vote, but rather provides the ability for participating shareholders to opt out of the program at any time for future meetings, and to override the standing voting instruction by voting at the upcoming meeting using the proxy materials they received for that meeting.

Although the Company believes that the Retail Voting Program complies with Rules 14a-4(d)(2) and 14a-4(d)(3) (and the proxy rules generally), the Company is nonetheless seeking confirmation that the Staff will not recommend any enforcement action by the Commission under Rules 14a-4(d)(2) and 14a-4(d)(3) with respect to the Company's implementation of the Retail Voting Program.

***

Should you have any questions regarding this request or require additional information, please do not hesitate to contact us at (212) 450-4539. We appreciate your attention to this matter.

Respectfully yours,

David A. Kern
Exxon Mobil Corporation

Louis Goldberg
Davis Polk

Ning Chiu
Davis Polk

6